862 A.2d 1187 (2004)
373 N.J. Super. 573
Donna WHITFIELD, Plaintiff-Respondent,
v.
Perry WHITFIELD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 20, 2004.
Decided December 22, 2004.
Paul H. Scull, Jr., Pennesville, attorney for appellant.
John G. Hoffman, attorney for respondent.
Before Judges KING, AXELRAD and HOLSTON, JR.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
This matrimonial appeal involves the interplay of veterans' retirement benefits and veterans' disability in the context of a post-judgment enforcement action. Defendant Perry Whitfield ("husband" or "former husband") contends the trial court erred in determining that the State of New Jersey has the authority to treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive the same amount in non-taxable veterans' disability benefits. We disagree with husband's characterization of the court's action. The Family Part judge required husband to compensate his former wife directly for the decrease in his pension occasioned by his voluntary election after the divorce. We are satisfied the court did not exceed its authority and acted within its power to enforce the equitable distribution award of the parties' final judgment of divorce.
*1188 The parties were married in 1968. A short while later, husband entered the United States Air Force. The parties separated in 1984, and were divorced on October 17, 1985. The judge who presided over the divorce trial found husband's anticipated military pension non-distributable to plaintiff Donna Whitfield ("wife" or "former wife") because it had not vested. On appeal, we held that husband's military pension was subject to equitable distribution. Whitfield v. Whitfield, 222 N.J.Super. 36, 39, 535 A.2d 986 (App.Div.1987). We reversed and remanded the matter to the trial court to determine wife's percentile share of husband's pension using a two-step process. Id at 48, 535 A.2d 986. We instructed the court to first "factor out that portion of the pension attributable to the marriage" by establishing a fraction representing "the number of years the parties were married during which [husband] accrued pension credits over the number of years necessary for the pension to be received." Ibid. That number, referred to as the "coverture fraction," was 16/20. Ibid. The court was then to determine the percentage of the pension to which the wife was entitled by applying the standards established in Painter v. Painter, 65 N.J. 196, 320 A.2d 484 (1974). Ibid. Accordingly, if and when the pension was received, wife would be entitled to the ministerial distribution of the "[second-step]% of 16/20ths of the pension." Ibid.
A remand hearing to decide the amount of wife's equitable distribution share of husband's pension was held on September 29, 1988. Following the hearing, an order was not immediately entered. Husband began receiving his military retirement pension in November 1988. Through 1993, he paid wife her purported equitably distributed share of this pension directly by personal check. On September 17, 1993, upon wife's motion, the court finally entered an order memorializing the decision rendered at the remand hearing, amending the final judgment of divorce as follows:
[Wife] shall be entitled to receive directly from the appropriate payor 30% of [husband's] military pension together with any cost of living increase payable in connection therewith.
Neither party sought reconsideration nor appealed from this order.
The Department of Defense began making direct payments to wife in December 1993. At some undisclosed point, without the wife's knowledge, husband unilaterally elected, pursuant to federal law, to waive a portion of his military retirement pay and receive a corresponding amount of tax-free disability benefits for a leg injury he had received while on active duty.[1] The Department of Defense's direct payment of wife's equitable distribution share of husband's military retirement pay was accordingly reduced.
From 1993 to 2000, various motions were filed by both parties. In April 2000, husband filed a motion seeking a resolution of child support arrears and other financial issues unrelated to his pension. Wife filed a cross-motion, seeking to compel husband to disclose the gross monthly amount of the pension he had received from the military in order to determine whether she had received thirty percent of his gross pension as had been ordered in September 1988. In his response, for the first time since the entry of the order allocating wife's share of his pension, husband asserted wife was only entitled to thirty percent of the marital coverture fraction, not thirty percent of his gross pension. The motion judge agreed, and *1189 entered orders on June 30 and September 20, 2000, voiding the 1993 order and awarding wife "30% of the coverture fraction which is 80% of [husband's] gross pension ... together with any cost of living increase."
Wife appealed and argued it was error to modify the 1993 order. For the first time on appeal, husband apparently argued that his former wife was not entitled to thirty percent of his gross pension because the Uniform Services Former Spouses' Protection Act ("USFSPA"), 10 U.S.C.A. § 1408, enacted in 1982, precluded the division of retirement pay that was waived in order to receive a veterans' disability benefit.
We determined that the intent of the trial judge at the time of the divorce was to award wife 37.5% of the coverture fraction of 16/20 (80%), which is thirty percent of husband's gross pension. Whitfield v. Whitfield, No. A-000730-00T1 (App.Div. January 17, 2002). In other words, wife had a 37.5% equitable interest in 16/20ths or 80% of husband's pension. We reversed and remanded the matter to the trial court to calculate the arrearage based on this formula. We expressly declined to address the USFSPA issue because it had not been raised below and husband had not filed a cross-appeal. The Supreme Court denied certification on April 25, 2002. Whitfield v. Whitfield, 172 N.J. 180, 796 A.2d 896 (2002).
Wife then filed an enforcement action seeking a judgment of $28,193.01 plus interest, representing the deficit through December 31, 2002. She based her calculation on thirty percent of husband's gross monthly pension of $2,429.00, which was his current pension as confirmed in a June 7, 2002 letter from the Office of Defense, Finance and Accounting Services.
Husband filed a cross-motion seeking an order entitling wife to thirty percent of his gross military pension less that portion of his pension paid as veterans' disability income. He contended, and reasserts on appeal, that his military disability benefits are not divisible and thus cannot be equitably distributed, citing Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L. Ed.2d 675 (1989) (holding that the USFSPA, which authorizes state courts to treat as community property "disposable retired or retainer pay," does not grant state courts the power to treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits). Therefore, he claims, his wife's equitable share of his pension under law must be calculated on the reduced amount. Furthermore, according to husband, because the federal government will only deduct and remit to his wife thirty percent of his monthly retirement pension after the deduction for veterans' disability payments, our State court family orders are bound by this determination. In support of his position, husband relies on our decision in La Sala v. La Sala, 335 N.J.Super. 1, 760 A.2d 1122 (App.Div.2000), certif. denied, 167 N.J. 630, 772 A.2d 932 (2001), in which we reversed the trial court's direction of a distribution scheme of a husband's Police and Firemen's Retirement System (PFRS) pension to his wife prior to his retirement which was inconsistent with the plan formula.
In a letter opinion of October 24, 2003, memorialized in an order of March 9, 2004, Judge Bowen found La Sala inapposite. Relying on our opinion in Torwich v. Torwich, 282 N.J.Super. 524, 528-29, 660 A.2d 1214 (App.Div.1995), he held that federal law does not preclude a State court from adjusting an order to compensate for the reduction due to husband's election of military disability benefits to enable his former wife to continue to receive the amount contemplated as equitable distribution under the final judgment of divorce. The *1190 judge concluded that wife's "equitably awarded interest in [husband's] pension has been and shall be fixed at 30% of [husband's] gross pension, without deduction for any portion thereof being allocated to disability, taxes, etc." Accordingly, he held husband responsible for the difference between the reduced amount received by his former wife directly from the Department of Defense and thirty percent of husband's gross pension without the disability deduction.
The judge fixed the arrearages from December 1988 through September 17, 2003 at $26,003.43, and ordered that it be satisfied from other assets, namely, husband's interest in a mortgage. In the future, husband was ordered to "directly pay [wife] the difference between what the military is paying [wife] and what [wife] is entitled to, which is currently $113.58 per month, but which may be increased or decreased depending upon the gross amount of post-retirement pay received by the [husband][.]" Husband was further ordered to provide wife with an annual accounting of the gross post-retirement pay he received "so an appropriate adjustment may be made to assure the [wife] receives an amount equal to the Court's previously ordered 30% of [husband's] gross post-retirement pay[.]"
We are in accord with Judge Bowen's decision. The facts of Torwich are strikingly similar to the present case. In Torwich, following a trial, a divorce judgment was entered in 1988 which awarded plaintiff-wife as equitable distribution of her husband's military pension "22.75% of [h]usband's disposable retired pay upon his retirement." Torwich, supra, 282 N.J.Super. at 525, 660 A.2d 1214. The final judgment also provided that taxes would be the sole deduction for purposes of the calculation of wife's share. Id. at 526, 660 A.2d 1214. Upon husband's retirement in l99l, the Department of Defense commenced paying his former wife 22.75% of his pension. Ibid. Thereafter, husband applied for service-related disability benefits so as to reallocate part of his retirement pay as tax-free disability. Ibid. He was awarded these benefits in 1992, which reduced his retired pay by the amount of his disability award, and accordingly reduced his former wife's 22.75% share of his pension. Ibid.
Mrs. Torwich sought relief under R. 4:50-1(f), seeking to require her former husband to pay her directly the monthly difference between what she received before and after he commenced receipt of disability benefits to give effect to the original equitable distribution order. Ibid. The Family Part judge denied the relief sought, concluding the wife had failed to demonstrate that enforcement of the order would be "unjust, oppressive or inequitable" based on the fact that she was aware her husband had a service-connected disability and she made no showing of fraud or misconduct on his part. Id. at 526-27, 660 A.2d 1214.
We reversed, noting that while the State court does not have the power to treat as a divisible marital asset the portion of retirement pay waived by the retiree in obtaining veterans' disability benefits, Mansell, supra, 490 U.S. at 583, 109 S.Ct. 2023, "that does not mean that other adjustments to the judgment cannot be made when such disability payments commence and reduce one spouse's receipts from his or her share of the other spouse's pension or retirement benefits." Torwich, supra, 282 N.J.Super. at 529, 660 A.2d 1214. We found that the husband's "waiver of pension monies while receiving disability pay had a substantial adverse impact on [wife's] equitable distribution" which constituted "exceptional and compelling circumstances" requiring an award to his wife "of an increased percentage of [husband's] *1191 remaining pension payments or some other adjustment to the equitable distribution." Id. at 529, 660 A.2d 1214. We remanded for a hearing and adjustment of the wife's equitable distribution in light of the deduction of her former husband's military pension. Ibid.
The remedy crafted by Judge Bowen is a logical extension of our Torwich decision. It is fair to assume that husband's potential election of disability benefits and the reduction in his retirement benefits were never at issue in the context of these protracted litigious divorce proceedings. Equitable distribution was ordered after a plenary trial in 1985, at which time the trial court excluded husband's military pension. At the September 29, 1988 remand hearing following the first appeal, the Family Part judge awarded wife thirty percent of husband's gross military pension, together with any cost of living increase.
Husband began receiving his military retirement pension in November 1988 and paid his former wife her equitably distributed share by personal check. In December 1993, the Department of Defense began making direct payments to wife. At some undisclosed time after the divorce and husband's retirement, he unilaterally elected to receive a portion of his military pension in non-taxable disability benefits. Husband did not inform wife of this waiver.
Nor did husband move for clarification or reconsideration of the September 17, 1993 order following his waiver of pension benefits. In fact, husband did not even mention the waiver in his April 2000 motion; his only challenge to equitable distribution of his military pension was that his former wife was only entitled to 30% of the coverture fraction of his gross pension. It was not until the pendency of the second appeal, sometime prior to January 2002, more than fifteen years after the parties' divorce, that husband asserted his pre-emption claim based on the USFSPA and Mansell.
We held in the first appeal that husband's military pension was subject to equitable distribution. As disability benefits and the USFSPA were never an issue, we have no difficulty in concluding that the trial judge, on the first remand, intended the term "military pension" to mean exactly what it says: the totality of benefits due to husband on his retirement from the service. It is highly unlikely the court intended to give husband carte blanche to reduce the value of his former wife's pension interest in order to benefit himself. We think it far more likely that the reasonable expectation of the court and both parties, at that time, was to give wife an enforceable, vested interest in thirty percent of defendant's full pension rights when he retired. Thus, by judicial determination, wife's interest in her former husband's military pension vested as of the date of entry of the court's decree and cannot be unilaterally altered.
We are mindful of a military retiree's entitlement under federal law to take advantage of tax-free benefits for his or her service-related disability. While defendant certainly had the legal right to receive disability benefits, his doing so effected a reduction of the whole of his retirement benefits, including a reduction in the thirty percent to which his wife had a vested interest. Strong public policy considerations militate against permitting a retiree to unilaterally convert, for his own economic benefit, a portion of his military pension to VA disability and defeat his former spouse's prior equitable distribution award.
The equities are particularly strong in a case such as this, where the retiree's silence prevented his former wife from *1192 bringing to the court's attention the possibility that her husband's retirement benefits would be decreased, and her monthly payment reduced, if and when he applied for disability benefits. Had that been raised as an issue at the outset, the court could have awarded wife an increased percentage of husband's remaining pension payments or made some other adjustment to equitable distribution to compensate wife for her share of the marital asset.
It is important to emphasize the procedural posture of this case. The issue is one of enforcement of a prior equitable distribution award, not a present division of assets. Wife does not seek to divide her former husband's disability benefits in violation of Mansell. Nor does she seek a greater percentage of her husband's military pension than she originally received at the time of his retirement pursuant to court order. Moreover, wife does not seek to alter the terms of her veteran-spouse's retirement plan or to compel the Department of Defense to make direct payments to her in excess of those permitted by federal law. The remedy she seeks, and that to which she is entitled, is an enforcement of the original order which was in effect before her former husband retired and unilaterally elected the waiver. Judge Bowen appropriately accomplished that result by requiring husband to make up the shortfall in his former wife's equitable distribution award occasioned by his actions.
The trial court's determination does not hinder husband's receipt of veterans' disability benefits. Nor does it impinge upon federal statutory rights husband has under the USFSPA or violate the doctrine of pre-emption. Rather, the determination is whether under our state law the trial court has the authority to interpret and enforce a judicial decree entered prior to the retiree's unilateral election of a method of payment that has tax advantages to him and adverse consequences to his former wife. We conclude that our court does have that authority. This was an appropriate remedy to avoid the inequities that would be imposed on a spouse who had no control over, but suffered the consequences of, the other's unilateral election to switch retirement benefits to tax-free disability benefits.
Mansell does not compel a different result. Mansell interpreted the USFSPA as preempting a state court's ability to order the division of veterans' disability benefits as equitable distribution. Judge Bowen's order does not transgress the USFSPA and Mansell. It does not provide for an explicit allocation of disability benefits or require the military spouse to remit disability funds, specifically, to the non-military spouse. The order merely enforces defendant's equitable distribution obligation to his former wife, which he may satisfy from any of his resources.
Our analysis and policy considerations are consistent with those followed by other state courts subsequent to the Supreme Court's decision in Mansell. In Mansell, at the time of the parties' divorce, the husband received both Air Force retirement pay and, pursuant to a waiver of a portion of that pay, disability benefits. Mansell, supra, 490 U.S. at 585, 109 S.Ct. at 2027. The parties entered into a property settlement agreement incorporated into their dissolution judgment which provided, in part, for the husband to pay his wife fifty percent of his total military retirement pay, including that portion of retirement pay waived so that the husband could receive tax-free disability benefits. Id. at 586; 109 S.Ct. at 2027. Four years later, in 1983, following the enactment of the USFSPA, the husband sought to modify the divorce decree by removing the provision that required him to share his *1193 total retirement pay with his former wife. Ibid.
The California Court of Appeal affirmed the Superior Court's denial of his request, the Supreme Court of California denied his petition for review, and the United States Supreme Court reversed and remanded. On remand, the Court of Appeal of California found there was an insufficient showing to disturb the final judgment. In re Marriage of Mansell, 217 Cal.App.3d 219, 265 Cal.Rptr. 227, 235 (Ct.App.1989). Accordingly, it denied the husband's motion for modification and permitted his former wife to retain fifty percent of his total military disability pay, including the waived portion, as agreed in the parties' 1979 property settlement agreement and divorce decree. The Court concluded its determination was one of state law, i.e., the propriety of the trial court's refusal to modify the terms of the parties' contract incorporated into the divorce judgment prior to the enactment of the USFSPA, although the rationale for reaching it involved the resolution of a federal question. Ibid.
Courts in a number of other states have addressed post-judgment waivers of retirement pay in circumstances similar to those expressed here and have protected the non-military spouse's interest through various means. Holding that Mansell merely prohibits state courts from ordering the division of the military spouse's retirement pay "upon divorce," Mansell, supra, 490 U.S. at 595, 109 S.Ct. at 2023, several courts have determined that nothing in Mansell or in the USFSPA prohibits them from enforcing the terms of a marital settlement agreement or divorce decree against military retirees who subsequently waive retirement benefits pledged to a former spouse in order to obtain tax-free disability benefits. See, e.g., In re Marriage of Krempin, 70 Cal.App.4th 1008, 83 Cal.Rptr.2d 134 (1999); Dexter v. Dexter, 105 Md.App. 678, 661 A.2d 171 (1995); In re Marriage of Stone, 274 Mont. 331, 908 P.2d 670 (1995); Blissit v. Blissit, 122 Ohio App.3d 727, 702 N.E.2d 945 (1997); Krapf v. Krapf, 439 Mass. 97, 786 N.E.2d 318 (2003); Johnson v. Johnson, 37 S.W.3d 892 (Tenn.2001); Kramer v. Kramer, 252 Neb. 526, 567 N.W.2d 100 (1997).
Some of these courts, as we did in Torwich, found the waiver of retirement pay and the resulting reduction in the pension payment to the non-military spouse were changed circumstances which permitted reassessment of support payments or redistribution of marital property. See, e.g., Kramer, supra, 567 N.W.2d at 113. Others have utilized a breach of contract theory, Dexter, supra, 661 A.2d at 174-75, or a resulting trust theory, Krempin, supra, 83 Cal.Rptr.2d at 143, to award the non-military spouse past sums waived by the military spouse to obtain disability benefits and to require continuation of payment of the agreed-upon percentage.
For example, in Johnson, supra, 37 S.W.3d at 897, the Tennessee Supreme Court held that the former wife of a military retiree had a vested interest in fifty percent of his military retirement benefits pursuant to a property settlement agreement and final judgment of divorce. Therefore, the retiree could not thereafter unilaterally diminish the spouse's interest by subsequently waiving a portion of his military retired pay to receive the same amount in non-taxable disability payments. The Court found the relief sought by Ms. Johnson to be in the nature of an enforcement action to recoup the loss of agreed support rather than a modification of the parties' marital agreement. The Court distinguished the United States Supreme Court's ruling in Mansell on the basis that the trial court was not seeking to divide veteran's disability benefits but rather to *1194 enforce the terms of the parties' marital dissolution agreement as it pertained to equitable distribution of the husband's military pension. Id. at 898.
Recently, in Krapf, supra, 786 N.E.2d at 318, the Massachusetts Supreme Court affirmed the orders of the trial judge and Appeals Court enforcing the provisions of a property settlement agreement in a manner similar to that employed by Judge Bowen. The parties entered into a separation agreement, incorporated in the divorce decree, allocating half of the husband's "pension rights with the U.S. Army" to his wife. Id. at 319-320. Almost a decade later, husband retired and both he and his former wife began receiving their respective fifty percent allotment of his military retirement benefit, including cost of living increases, directly from the Department of Defense. Id. at 320. Three years later, without his former wife's knowledge, the husband applied for and began receiving VA disability benefits which significantly reduced his and his former wife's military retirement payments in accordance with the federal waiver. Id. at 320-21. The wife sought a declaration of rights concerning the VA and Department of Defense payments as well as arrearages. The trial court concluded the husband "impermissibly modified the agreement by divesting himself of an asset that he had legally pledged to the plaintiff in which she thus had a vested interest, and from which she had a reasonable expectation of receiving income" and violated his fiduciary duty to his former spouse. Id. at 322. The court enforced the agreement by ordering the husband to pay his former wife an amount equal to the military pension income she would have received under the parties' separation agreement had husband not waived benefits, as well as the payment of arrears accumulated from the date of reduction of pension benefits. Ibid.
The Appeals Court affirmed the order of the trial court in all respects, although it slightly modified the language of the judgment, expressly providing that "[wife] is entitled to receive from the defendant, pursuant to the agreement, a sum of money per month equivalent to fifty per cent of the monthly military retirement pay that the defendant would receive if his military retirement pay were not reduced by the disability payments minus the monthly military retirement pay the [wife] receives directly from the Department of Defense." Krapf v. Krapf, 55 Mass.App.Ct. 485, 771 N.E.2d 819, 824 (2002).
The Massachusetts Supreme Court agreed that the parties intended the term to encompass the totality of benefits due the retiree and the husband unilaterally and impermissibly modified the agreement, stating:
The [trial] judge merely exercised her well-established equitable authority to construe the agreement where the contracted-for method of paying the plaintiff her equitable share of the marital estate was no longer available because of the defendant's actions.
[Krapf, supra, 786 N.E.2d at 325.]
The Court further concluded that federal law did not prohibit the enforcement of defendant's contractual obligation to his former wife, which he could satisfy from any of his resources. Id. at 326, 771 N.E.2d 819.
We also note that other state courts have afforded divorced military spouses similar relief based, at least in part, on indemnity provisions in a property settlement agreement designed to guarantee a minimum monthly income to the non-military spouse which provide for alternative payments to compensate for a reduction in non-disability retirement benefits divided as marital property, so long as veterans' disability funds are not specified as the *1195 source of such payments and the retiree is free to satisfy indemnity obligations from any source. See, e.g., Abernethy v. Fishkin, 699 So.2d 235, 239-40 (Fla.1997); McHugh v. McHugh, 124 Idaho 543, 861 P.2d 113, 114-16 (1993); Scheidel v. Scheidel, 129 N.M. 223, 4 P.3d 670, 673-74 (App.2000); In re Marriage of Strassner, 895 S.W.2d 614, 617-18 (Mo.App.1995); Owen v. Owen, 14 Va.App. 623, 419 S.E.2d 267, 269-71 (1992).
Based on the foregoing discussion, we affirm the Family Part judge's March 9, 2004 order which enforced the prior equitable distribution of husband's military pension as within the court's discretion and consistent with the law.
Affirmed.
NOTES
[1] Unlike military retirement pay, VA disability pay is exempt from taxation. See 38 U.S.C.A. § 5301(a). The military retirement pay is reduced by the amount of the disability benefits to avoid double payment to the veteran. See 38 U.S.C.A. § 5305.