NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3727-16T1

MARGARET FATTORE,

      Plaintiff-Respondent/
Cross-Appellant,

v.

FRANK FATTORE,

      Defendant-Appellant/
Cross-Respondent.

_____

APPROVED FOR PUBLICATION

February 5, 2019

APPELLATE DIVISION

Argued January 16, 2019 – Decided February 5, 2019

Before Judges Alvarez, Nugent, and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0224-97.

David Perry Davis argued the cause for appellant/cross-respondent.

Howard L. Felsenfeld argued the cause for respondent/cross-appellant (Felsenfeld & Clopton, PC, attorneys; Howard L. Felsenfeld, on the briefs).

The opinion of the court was delivered by

MAWLA, J.A.D.

Defendant Frank Fattore appeals from a February 25, 2017 order, which required him to indemnify plaintiff Margaret Fattore for the loss of her share of equitable distribution of defendant's military pension, which was waived as a result of his receipt of disability benefits. Plaintiff cross-appeals and asserts the trial court should have granted her request for alimony to replace the value of her lost pension benefit. Pursuant to the United States Supreme Court decision in Howell v. Howell, ____ U.S. ___, 137 S. Ct. 1400 (2017), we hold a trial court may not indemnify a payee spouse when the payor spouse waives a military pension and receives veteran disability retirement benefits. However, a court is free to treat the pension waiver as a change in circumstances and may award the payee alimony or modify it. We reverse and remand the trial court's order for further proceedings consistent with this opinion.

The following facts are taken from the record. The parties were divorced in 1997, following a thirty-five-year marriage. At the time, both parties were fifty-five years of age. The terms of the parties' divorce were memorialized in a six-page consent dual final judgment of divorce.

The judgment included a mutual alimony waiver, which reads as follows: "Plaintiff and defendant each hereby waive alimony as to the other party now and in the future." As to equitable distribution, the judgment provided defendant

2

would retain the former marital residence located in Hamilton, and the mortgage obligation associated with it, and pay plaintiff $55,000 as her share of the equity. The parties agreed to retain all bank accounts, automobiles, and credit card debt in his or her own name without a credit, offset, or liability to the other.

The judgment also divided the parties' pensions. Plaintiff, who had been employed as an operating room nurse in a hospital, had earned a modest pension. The parties agreed defendant had a fifty percent interest in the marital coverture portion of her pension, which had "been offset against the equity in the marital home." Defendant was serving full time in the Army National Guard when the divorce occurred and had also accumulated a pension. The parties' judgment divided the marital coverture portion of the military pension equally as follows:

> Plaintiff shall be entitled to receive fifty percent . . . of defendant's military pension which was accumulated during the marriage . . . via a [q]ualified [d]omestic [r]elations [o]rder [QDRO] to be prepared by attorneys for plaintiff. Plaintiff shall not be entitled to any post-judgment, pre-retirement cost of living increases related to said pension.

A QDRO of defendant's military pension was completed in 1999. Defendant continued to serve in the Army, following the divorce, until he became disabled in 2002. At the time, defendant was able to collect his pension and disability benefits without any impact upon the pension payout. Defendant

3

also received social security benefits. At some point, defendant opted for disability benefits, which he could receive tax free.

The record reflects plaintiff never contacted defendant to inquire whether the pension was in pay status and defendant assumed she had received her share of the benefit. Although the parties share children and grandchildren, they had little communication during the intervening years since the divorce. In 2010, plaintiff contacted the office of the Army charged with administering the pension to inquire why she had not receive any payments. The response was as follows:

> Please be advised that a portion of [defendant's] pay is based on disability. Therefore, it cannot be divided under the USFSPA [Uniformed Services Former Spouses Protection Act, 10 U.S.C. §1408]. The disability amount is used as an authorized deduction. In this case, when the disability amount is deducted from his gross pay along with the survivor benefit portion, there's nothing left for the community property.

In 2016, plaintiff filed a motion to compel defendant to compensate her for her share of the military pension. The court conducted a plenary hearing over two days and considered the parties' testimony. The trial judge made oral findings and signed the February 25, 2017 order.

4

The judge accepted defendant's testimony his disability forced him to retire. She found defendant's monthly income to be as follows: military disability retirement $3400; VA disability benefits $3100; and social security $1800. Only the social security was taxable. The judge also noted defendant had remarried and his wife was gainfully employed. The judge credited defendant's testimony he did not intentionally seek to deprive plaintiff of her share of the pension, by seeking disability benefits because neither he nor plaintiff knew of the applicable federal law. Nevertheless, she found the circumstances worked an unfair result. The judge stated:

> [D]efendant took an incredibly unreasonable position, in that, looking at the statute per se, a QDRO could not be implemented whereby . . . plaintiff could no longer receive her [fifty] percent of the coverture value of . . . defendant's military pay, because now it's been converted to [one-hundred] percent non-taxable VA benefits that are exempt.
>
> That doesn't mean that she loses the interest. Even . . . defendant, when questioned . . . by this [c]ourt . . . didn't think it was fair, and neither does the [c]ourt.

The trial judge also rejected defendant's argument plaintiff had "sat on her rights" and was barred from seeking relief, because plaintiff had "limited funds" and could not hire counsel in 2010. The judge noted plaintiff had retired in 2013, and had to move out of Mercer County because her social security and

pension totaled $22,848 per year. According to plaintiff's testimony, a condominium she had purchased in a more affordable area had lost nearly one-half of its value. The judge noted plaintiff had a "bare bones budget" of $39,540 per year, which still exceeded her income and required she sell assets to meet her needs. Conversely, the judge found defendant had "tax free income of over $80,000 per year" and "his budget is only $74,436 [per year]." These figures did not include his wife's earnings.

As a result, the judge appointed a pension appraiser "to determine the value of plaintiff's coverture interest in . . . defendant's pension at the time the parties executed their . . . judgment of divorce." The judge ordered

> [i]n the interim, . . . defendant shall pay directly to . . . plaintiff the sum of $1800 per month, to be paid in a lump sum by the first of every month . . . . This payment is not to be considered an alimony payment as suggested by [plaintiff's counsel], [although] that could be a course that this [c]ourt could take but, rather, it's an equitable distribution payment and, therefore, said payments are not deductible by . . . defendant nor taxable to . . . plaintiff.

The judge ordered defendant to pay plaintiff the $1800 by either utilizing the cash surrender value from liquidation of a life insurance policy or by paying her the sum directly, which the judge noted equaled his social security receipts. The judge stated the payment of defendant's social security funds to plaintiff

A-3727-16T1

was "not to suggest that the [c]ourt doesn't believe that . . . plaintiff should receive nothing from . . . defendant's military pension. She is simply [to] get payment from some other income or from some other asset."

The judge reached the conclusion to compensate plaintiff for the lost pension benefit by citing our decision in Whitfield v. Whitfield, 373 N.J. Super. 573 (App. Div. 2004). There, relying upon the extant federal law, we affirmed a post-judgment order, which required a spouse who had served in the military "to compensate his former wife directly for the decrease in his pension occasioned by his voluntary election [of disability benefits] after the divorce." Id. at 575. The trial judge recited our reasoning that "[s]trong public policy considerations militate against permitting a retiree to unilaterally convert, for his own economic benefit, a portion of his military pension to VA disability and defeat his former spouse's prior equitable distribution award." Id. at 582. The trial judge noted we found the order under appeal in Whitfield was not preempted by federal law because it did "not provide for an explicit allocation of disability benefits or require the military spouse to remit disability funds, specifically, to the non-military spouse. The order merely enforce[d] defendant's equitable distribution obligation to his former wife, which he may satisfy from any of his resources." Id. at 583.

Regarding the request for alimony, the trial judge held "[t]he [c]ourt is denying plaintiff's request that . . . defendant should now be compelled to pay alimony. Alimony is not compensation for equitable distribution. The parties waived alimony in this matter."

Additionally, the trial judge analyzed plaintiff's request for counsel fees, and concluded she had filed the post-judgment motion in good faith and had no ability to pay her counsel fees. The judge rejected defendant's position of offering nothing to plaintiff. She found defendant's contention federal law did not permit his pension to be distributed by means of a QDRO, was unreasonable. The judge awarded plaintiff $10,000 in counsel fees. This appeal followed.

I.

We defer to a trial judge's factfinding "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J 474, 484 (1974)). However, "[t]his court does not accord the same deference to a trial judge's legal determinations." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)). "[T]he trial judge's legal conclusions, and the application of those conclusions to the facts,

are subject to our plenary review. Our review of a trial court's legal conclusions is always de novo." Reese, 430 N.J. Super. at 568 (citations omitted).

On appeal, defendant argues the trial judge erred by requiring him to pay plaintiff her share of the equitable distribution for the pension from another source. Defendant asserts this sort of indemnification was expressly preempted by the United States Supreme Court in Howell. He argues the award of counsel fees must also be reversed because it was predicated on the trial judge's mistaken application of the law to compensate plaintiff for the loss of the pension, where no such right existed.

Plaintiff argues if we conclude the trial judge's order is preempted by Howell, we must reverse the denial of alimony "given the substantial change in circumstances both by the judgment of divorce . . . and the current circumstances of the parties giving full consideration to the contemplation of . . . [p]laintiff receiving the pension benefits of . . . [d]efendant."

## A.

We agree with defendant the trial judge's decision to indemnify plaintiff dollar-for-dollar from another asset belonging to defendant was erroneous as a matter of law. However, we must note the trial judge did not have the benefit

of the Howell opinion, which was issued approximately three months after her decision.

Prior to Howell, Congress enacted the USFSPA, which permitted state courts to treat "disposable retired pay" as subject to equitable distribution, but excluded any pay waived in order to receive veterans' disability benefits from equitable distribution. 10 U.S.C. §1408(c)(1) and (a)(4)(ii). In Mansell v. Mansell, 490 U.S. 581, 594-95 (1989), the United States Supreme Court held the USFSPA preempted state court orders which permitted equitable distribution of disability benefits.

Howell squarely addressed the issue now raised by defendant on appeal. There, the parties' Arizona divorce decree stipulated the wife would receive one-half of the husband's United States Air Force retirement pay. 137 S. Ct. at 1404. The husband retired one year after the divorce and the wife began to receive her share of the pension. Ibid. However, thirteen years later, the husband was declared partially disabled, resulting in the receipt of disability benefits and waiver of a commensurate amount of retirement pay, which reduced the wife's share of the retirement pay. Ibid. The wife petitioned the Arizona family court to enforce the divorce decree and restore the sums she had lost from the husband's retirement pay. Ibid. The trial court held she had a vested interest

and right to receive the full one-half amount of the pension.  Ibid.  On appeal, the Arizona Supreme Court affirmed the trial court and held federal law did not preempt the trial court's order.  Ibid.

The Howell Court reversed, and held "federal law completely pre-empts the States from treating waived military retirement pay as divisible community property."  Id. at 1405.  The Court held a military pension, which has been equitably distributed, is not a vested right, but rather, a contingent benefit where the pension is later reduced as a result of a veteran's disability, and

> [t]he state court did not extinguish (and most likely would not have had the legal power to extinguish) that future contingency.  The existence of that contingency meant that the value of [the wife's] share of military retirement pay was possibly worth less—perhaps less than [the wife] and others thought—at the time of the divorce.
>
> [Id. at 1405-06.]

Regardless, the Howell Court held Congress intended to omit disability benefits from disposable retirement pay.  Id. at 1406.  Therefore, state courts cannot overcome Congress' intent

> by describing the family court order as an order requiring [one spouse] to "reimburse" or to "indemnify" [the other], rather than an order that divides property.  The difference is semantic and nothing more.  The principal reason the state courts have given for ordering reimbursement or indemnification is that they wish to

restore the amount previously awarded as community property, i.e., to restore that portion of retirement pay lost due to the postdivorce waiver. And we note that here, the amount of indemnification mirrors the waived retirement pay, dollar for dollar. Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus preempted.

[Id. at 1406.]

For these same reasons, we hold the order in this case requiring the calculation of the hypothetical pension benefit waived as a result of defendant's receipt of disability benefits, and payment of the figure from another asset belonging to defendant, is preempted and reversed.

## B.

Notwithstanding, we agree with plaintiff's argument the disability waiver was a substantial and permanent change in circumstances warranting consideration of an award of alimony. Defendant argues "reopening the judgment of divorce and awarding spousal support would be unfair and contrary to well-established case law." We hold an alimony waiver cannot withstand such a substantial change in circumstances as occurred here, and it is neither fair nor equitable to uphold such a waiver.

At the outset, we note the Howell Court stated:

> We recognize, . . . the hardship that congressional preemption can sometimes work on divorcing spouses. But we note that a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or, . . . <u>take account of reductions in value when it calculates or recalculates the need for spousal support</u>.
>
> [<u>Howell</u>, 137 S. Ct. at 1406 (emphasis added) (citations omitted).]

Defendant argues the highlighted language excludes circumstances where there has been an alimony waiver. We disagree.

Since <u>Howell</u>, the suggestion has been made of a litany of potential remedies a state court could employ to overcome federal preemption, including: application of res judicata to judgments pre-dating <u>Howell</u>; upholding indemnification agreements on contractual grounds; vacating and reallocating previous equitable distribution; offsetting the value of a military pension against another asset; and considering an award of alimony. Eliza Grace Lynch, <u>A Change in Military Pension Division: The End of Court Adjudicated Indemnification-Howell v. Howell</u>, 44 Mitchell Hamline L. Rev. 1064, 1082-86 (2018).

The circumstances here do not permit for the remedies of contractual enforcement of indemnification because the parties had no such arrangement.

Moreover, offset or reallocation of equitable distribution are not available remedies because the parties have been divorced for several years, and equitable distribution is final and not subject to a change in circumstances. In support of res judicata as a remedy, it has been argued "there is nothing in Howell that suggests . . . the Supreme Court intended to invalidate or otherwise render unenforceable prior valid judgments." Id. at 1083. Here, however, res judicata is an inadequate remedy because Mansell had already held the USFSPA expressly excluded veteran disability benefits from the definition of disposable retired pay prior to the entry of the parties' judgment. Mansell, 490 U.S. at 594-95.

We find consideration of an alimony award to be a potential remedy in this case. Our Supreme Court has stated "support payments are intimately related to equitable distribution[.]" Smith v. Smith, 72 N.J. 350, 360 (1977). Family Part judges possess a broad supervisory role in determining the fairness of agreements between spouses. Indeed,

> trial judges . . . have the utmost leeway and flexibility in determining what is just and equitable . . . . In each case the court must determine what, in the light of all the facts presented to it, is equitable and fair, giving due weight to the strong public policy favoring stability of arrangements.
>
> [Ibid.]

A-3727-16T1

"An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing Sachau v. Sachau, 206 N.J. 1, 5 (2011)). However,

> [t]o be sure, "the law grants particular leniency to agreements made in the domestic arena" and vests "judges greater discretion when interpreting such agreements." This leniency is derived from the terms of the marital agreement and the nature of some post-judgment issues, such as . . . financial support for the family, that may require modification of the marital agreement over the years as events occur that were never contemplated by the parties.
>
> [Id. at 45-46 (citations omitted).]

Thus, contract principles and equity and fairness are not mutually exclusive. Moreover, apart from a judge's role to assure fairness, the parties owe a duty of fairness to one another. See Tannen v. Tannen, 416 N.J. Super. 248, 262 (App. Div. 2010) (holding spouses have "the obligation to deal fairly with each other"); see also Frank Louis, Spousal Duty: What Is It and How Can It Be Used?, 2017 Family Law Symposium Resource Manual 125, 131-36 (analyzing spousal duty, including the responsibility of fairness between spouses at the end of a marriage).

With these principles in mind, we address whether the alimony waiver agreed to by the parties before defendant's retirement and disability can withstand the inequity created by unforeseeable circumstances.

> "Waiver" is the intentional relinquishment of a known right. It is a voluntary act, "and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on." It is requisite to waiver of a legal right that there be "a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part"; "A waiver, to be operative, must be supported by an agreement founded on a valuable consideration[.]"
>
> [W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 152-53 (1958) (emphasis added) (citations omitted).]

> Alimony is an "economic right that arises out of the marital relationship and provides the dependent spouse with 'a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage.'" . . . "The basic purpose of alimony is the continuation of the standard of living enjoyed by the parties prior to their separation." This permits the spouse "to share in the accumulated marital assets to which he or she contributed."
>
> [Quinn, 225 N.J. at 48 (citations omitted).]

Furthermore, courts may award alimony "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just[.]" N.J.S.A. 2A:34-

16

23. "Courts have the equitable power to establish alimony and support orders in connection with a pending matrimonial action, <u>or after a judgment of divorce or maintenance</u>, and to revise such orders as circumstances may require." <u>Crews v. Crews</u>, 164 N.J. 11, 24 (2000) (emphasis added) (citing <u>Lepis v. Lepis</u>, 83 N.J. 139, 145 (1980)).

Here, we hold the alimony waiver was not a bar to a consideration of a post-judgment award of alimony to plaintiff. Although the waiver of alimony was mutual, we need not speculate what defendant's reasons for waiving it were because his waiver stands separate, and presumably had separate consideration, from plaintiff's waiver. However, the record readily demonstrates plaintiff gave valuable consideration for the waiver of alimony in exchange for the promise of the future ability to share in defendant's military pension. Moreover, as defendant notes in his reply brief, his earnings were approximately thirty-four percent greater than plaintiff's at the time of the divorce. Thus, there was valuable consideration given by plaintiff in exchange for the alimony waiver, and the unforeseeable loss of the bargained for pension benefit was a substantial and permanent change in circumstances, which invalidated the waiver. Upholding the alimony waiver in these circumstances would be wholly unfair.

A-3727-16T1

We agree with defendant that there was not a "full record" created to address what alimony should be awarded. The gravamen of the trial judge's decision addressed the parties' dispute through the lens of equitable distribution. Defendant cites his age as a reason why alimony is inappropriate. Although we draw no conclusion on that account, we note the court may consider defendant's assets, or income from assets, as a potential source for an alimony award as long as it is not a dollar-for-dollar indemnification. See N.J.S.A. 2A:34-23(b)(10) and (11).

Moreover, we agree with defendant's argument that plaintiff's alimony claim is primarily tethered to the former marital lifestyle. Quinn, 225 N.J. at 48. The trial judge characterized the parties' marital lifestyle as "frugal." Even so, this does not obviate an award of alimony to plaintiff because an alimony determination requires an assessment of "the quality of economic life during the marriage, not bare survival." Crews, 164 N.J. at 24 (quoting Lepis, 83 N.J. at 150). Moreover, the Legislature has stated an alimony determination shall consider "[t]he standard of living established in the marriage . . . and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other." N.J.S.A. 2A:34-23(b)(4). In light of the lost pension benefit,

18

and plaintiff's inability to meet her "bare bones" lifestyle with her income, we are not convinced she is capable of meeting the quality of the marital standard of living without alimony.[1]

C.

Finally, as we noted, the award of counsel fees was premised on a mistaken interpretation of federal law and is superseded by Howell. Therefore, we are constrained to reverse the award of counsel fees. However, we hasten to add that the record demonstrates plaintiff has no ability to pay counsel and the need for a contribution to her counsel fees. A Family Part judge is empowered to make an award of counsel fees to enable the parties to litigate on an even playing field "irrespective of that party's success in the matrimonial action." Anzalone v. Anzalone Bros., Inc., 185 N.J. Super. 481, 486-87 (App. Div. 1982). Similarly, N.J.S.A. 2A:34-23 states:

> The court may order one party to pay a retainer on behalf of the other for . . . legal services when the respective financial circumstances of the parties make the award reasonable and just. In considering an application, the court shall review the financial capacity of each party to conduct the litigation and the criteria for award of counsel fees that are then pertinent as set forth by court rule.

---

[1] We note any alimony awarded shall be retroactive to May 6, 2016, the filing date of plaintiff's motion seeking it.

Thus, although we have reversed the award of counsel fees, the trial judge is free on remand to re-award plaintiff counsel fees to enable her to prosecute her alimony claim.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3727-16T1