**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4219-18T3

TODD LAPINSON,

     Plaintiff-Respondent,

v.

JULIE LYNN LAPINSON,

     Defendant-Appellant.

_____

          Submitted November 16, 2020 – Decided  December 14, 2020

          Before Judges Mayer and Susswein.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2488-16.

          Laufer, Dalena, Jensen, Bradley, & Doran, LLC, attorneys for appellant (Michelle A. Benedek, on the briefs).

          Ziegler, Resnick & Epstein, attorneys for respondent (Robert A. Epstein, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant Julie Lynn Lapinson appeals from a May 3, 2019 order allocating the marital debt and denying her cross-motion in its entirety. We affirm.

Defendant and plaintiff Todd Lapinson formally separated in December 2015. During the marriage, defendant stayed home, raising the couple's three children, born in 2003, 2005, and 2008. Upon separating, defendant remained in the marital home with the children and plaintiff moved to a townhouse. There was no support agreement during the time period the parties lived separately but they continued paying all expenses the same as when the parties lived together. During the separation period, the parties incurred credit card debt, 401(k) loan debt, and maintained three personal lines of credit.

Plaintiff filed for divorce on May 13, 2016. The parties signed a marital settlement agreement (MSA), which was incorporated into a February 2, 2018 dual judgment of divorce (JOD). The MSA addressed issues related to the dissolution of the marriage, including the children's extracurricular activities and allocation of the marital debt.

Regarding extracurricular expenses for the children, the parties agreed to the sum of $210 per month, or $2,520 annually. This amount was included in the calculation of plaintiff's child support obligation. In the event the

extracurricular expenses exceeded the specified sum, the parties agreed defendant would pay thirty-five percent and plaintiff would pay sixty-five percent. However, the parent incurring the extracurricular expense had to obtain the other parent's prior written consent or else would be responsible to pay the entire expense.

The MSA also addressed the marital debt. If the parties were unable to agree upon the allocation of the marital debt, Paragraph 8.2 of the MSA provided the parties would retain Marc Koenig, a certified public accountant, to resolve the issue. Specifically, Koenig was tasked with preparing a report, analyzing the debt, and determining if the debt was marital or belonged to either plaintiff or defendant. The party incurring non-marital debt was obligated to pay the amount of the individually incurred debt in accordance with the MSA.[1] In determining the parties' marital debt, Koenig reviewed defendant's credit cards,[2]

---

[1] The parties agreed that the debt on the American Express Optima card, American Express Gold card, Chase Sapphire card, and Discover card, totaling $109,184, represented marital debt. In addition, the parties agreed the three forgivable loans that would become due if plaintiff was terminated from his job prior to the forgiveness period was marital debt, and they would be equally responsible for the repayment of any loan balances.

[2] Defendant had the following credit cards in her name: American Express Optima, Bank of America Visa, Nordstrom, Neiman Marcus, and Bloomingdales.

A-4219-18T3

loans against plaintiff's 401(k) retirement account, and the lines of credit.[3] Pending Koenig's report, the MSA required plaintiff to continue paying the minimum monthly amounts toward the outstanding debt. If the parties were unable to reach an agreement concerning the marital debt, the MSA provided Koenig would conduct a mediation to resolve the matter. In the event mediation was unsuccessful, the MSA stated "either party [could] file for a determination by the [c]ourt or participate in binding arbitration (if agreed upon by the parties) . . . ."

Koenig prepared a draft report on September 12, 2018. In preparing his report, Koenig reviewed documents submitted by the parties. In reviewing the parties' information, Koenig concluded most of the debt was joint marital debt, with the exception of defendant's personal credit cards amounting to $24,985 and should be split equally. Based on the documentation, Koenig determined defendant was responsible to pay $139,803 toward the debt and plaintiff was responsible to pay $116,818 toward the debt.

Because defendant was dissatisfied with the allocation of the marital debt, the parties attended mediation with Koenig. The mediation was unsuccessful.

---

[3] The lines of credit included: a Wells Fargo secured line of credit, a Wells Fargo unsecured line of credit, and a Bank of America personal line of credit.

A-4219-18T3

As a result, in accordance with the MSA, plaintiff filed a motion to determine allocation of the marital debt. Defendant filed a cross-motion seeking various relief, including a request for a plenary hearing regarding allocation of marital debt.

After hearing the arguments of counsel, the judge rendered an oral decision, granting plaintiff's motion and denying defendant's cross-motion. In reviewing the MSA, the judge deemed "Koenig's report . . . dispositive." The judge explained "[n]othing in the MSA says that [Koenig's report] cannot be dispositive." He added that defendant "waited six months to file a challenge to the report and only by way of a cross motion." The judge rejected defendant's contention that Koenig's report was just a draft, determining "that's not a sufficient excuse." The judge approved the marital debt allocation as calculated by Koenig. The judge also held plaintiff was "to be reimbursed . . . from the sale of the marital home" for his payment of the debt service.

Regarding defendant's request to enforce payment attorney's fees previously awarded to defense counsel, the judge noted the award had been reduced to a judgment. Because the law firm had a judgment, the judge stated the award should be satisfied from plaintiff's share of the net proceeds associated with the sale of the marital home. If funds from the sale of the home were

insufficient to pay the full judgment, the judge concluded the law firm had other methods to enforce its judgment.

On the issue of defendant's request for reimbursement of the children's extracurricular activities, the judge noted the MSA required the parties "to agree to the extracurricular activities and the costs of such that exceeds [the] $2,520 annually." He explained the MSA also provided that "if a party registers the child for an extracurricular activity without the prior written consent of the other party, then that party shall be responsible for [one hundred] percent." The judge held defendant had "not shown she . . . satisfied . . . her obligation to pay the $2,520 in expenses. Furthermore, defendant [did] not itemize or specifically explain the expenses incurred for the children's extracurricular activities." He also found defendant failed to "show the plaintiff's written consent for the children to participate in [the] activities." Thus, the judge denied defendant's request for reimbursement of the additional extracurricular expenses.

On appeal, defendant argues the judge erred in relying on Koenig's report to determine the allocation of the marital debt between the parties. In addition, defendant contends the judge should have granted her request to conduct a plenary hearing and afford her an opportunity to cross-examine Koenig. Further, defendant claims the judge erred in failing to enforce the prior order

awarding her counsel fees and denying her request for reimbursement for the children's extracurricular expenses. She also asserts she was entitled to an award of counsel fees related to her cross-motion.

We defer to family court fact findings "when supported by adequate, substantial, credible evidence." Fattore v. Fattore, 458 N.J. Super. 75, 83 (App. Div. 2019) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, we are not bound by "[a] trial court's interpretation of the law[,] and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted). "To the extent that the trial court interprets the law and the legal consequences that flow from the established facts, we review its legal conclusions de novo." Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 329 (2017).

"Interpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998) (citing Bradford v. Kupper Assocs., 283 N.J. Super. 556, 583 (App. Div. 1995)). "The law grants particular leniency to agreements made in the domestic arena," allowing "judges greater discretion

when interpreting such agreements." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992) (citing N.J.S.A. 2A:34-23).

"Settlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (citing Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). "Marital agreements . . . are approached with a predisposition in favor of their validity and enforceability." Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995) (citing Peterson v. Peterson, 85 N.J. 638, 642 (1981)). Our Supreme Court "has observed that it is 'shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been advanced by the parties themselves.'" Quinn, 225 N.J. at 44 (quoting Konzelman, 158 N.J. at 193). Consequently, courts will not "unnecessarily or lightly disturb[]" an MSA that is fair and equitable. Ibid.

Having reviewed the record, we are satisfied the MSA addressed the parties' express intent regarding the marital debt. The MSA incorporated the parties' agreement to have Koenig review documents provided to him and prepare a report based on his evaluation of the information. Because the parties were unable to resolve the issue of marital debt after receipt of Koenig's report, they participated in mediation as required by the MSA. When mediation failed,

the MSA allowed either party to file an application with the trial court seeking a determination on the allocation of marital debt.

Here, plaintiff filed a motion for the court to resolve the marital debt issue. The judge considered Koenig's report and the language in the MSA in rendering his determination on the allocation of the marital debt. The MSA explicitly provided any joint debt would be "divided equally" and any debt not deemed to be joint would be the "sole obligation of a party."

Contrary to defendant's argument, a plenary hearing was not required "to discern the intent of the parties at the time the agreement was entered and to implement that intent." Quinn, 225 N.J. at 45 (citing Pacifico v. Pacifico, 190 N.J. 258, 267 (2007)). The parties entered into an enforceable agreement that clearly and unambiguously set forth the procedure for allocation of the marital debt. Defendant failed to proffer any additional information that should have been considered by the judge beyond the information provided by the parties in the motion and cross-motion. To the extent defendant disagreed with Koenig's report, she waited until plaintiff filed his motion in accordance with the MSA to voice her objections.[4] Under the circumstances, we discern no abuse of

---

[4] Defendant cites communications with Koenig before and after the mediation as evidence of her objections to his report. Reference to such communications is improper and violates mediation confidentiality. R. 1:40-4(d).

discretion in the judge's consideration of the MSA and Koenig's report in allocating the parties' marital debt.

We next consider defendant's claim that the judge disregarded N.J.R.E. 808 in admitting Koenig's report because it constituted hearsay and no exceptions to the hearsay rule applied. N.J.R.E. 808 applies to "[e]xpert opinion included in a hearsay statement admissible under an exception" and provides:

> Expert opinion that is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the court finds that the circumstances involved in rendering the opinion tend to establish its trustworthiness. Factors to consider include the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion.

Trustworthiness is the overarching principle of N.J.R.E. 808. See N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 487 (App. Div. 2016). However, "[w]hen objectionable hearsay is admitted in a bench trial without objection, [it is] presume[d] that the fact-finder appreciates the potential weakness of such proofs, and takes that into account in weighing the evidence."[5] N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 349 (App.

---

[5] Defendant's counsel initially objected to attachment of Koenig's report in the motion papers "because it [was] not in evidence, but be that as it may, I referred to it."

A-4219-18T3

Div. 2016) (citing In re Civil Commitment of A.X.D., 370 N.J. Super. 198, 202-03 (App. Div. 2004)). "[T]he trial court may give such evidential weight to objectionable hearsay that is appropriate under the circumstances," and "an appellant faces an especially high hurdle in an appeal from a civil bench trial to establish that the admission of such evidence constitutes 'plain error' . . . that the evidence was 'clearly capable of producing an unjust result.'" Id. at 349-50.

Here, defendant failed to explain how or why Koenig's report was untrustworthy. The parties mutually agreed to retain Koenig to conduct a neutral accounting analysis of the marital debt, signifying their belief that Koenig lacked any bias or improper motive. Nor did defendant claim Koenig was impartial or biased. The MSA delineated Koenig's task, specifying his role in analyzing the parties' finances to resolve the marital debt dispute.

In addition, defendant failed to demonstrate that Koenig's report was improperly weighed by the judge in reaching his decision. The judge noted there nothing in the MSA to indicate the report could not be dispositive. The judge was free to give the report whatever weight he deemed appropriate in rendering his decision. See Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (holding a trial judge has the option, after admission of expert reports, to accord such weight to them as he or she deems appropriate).

We next consider defendant's argument that the judge was required to consider the statutory factors governing equitable distribution, N.J.S.A. 2A:34-23.1, to resolve the marital debt and debt service reimbursement. Because the MSA represented the parties' agreement to resolve all issues related to the dissolution of the marriage, including equitable distribution, and defendant failed to demonstrate that the MSA was invalid, unfair, or inequitable, N.J.S.A. 2A:34-23.1 is inapplicable. The MSA represented the parties' voluntary settlement of all issues and the judge properly enforced the agreement as written.

We turn to defendant's claim that the judge erred in declining to enforce a prior order compelling plaintiff's payment of counsel fees. She contends the judge should have ordered plaintiff to apply his "2019 tax refund and/or current deferred compensation" or conducted an ability to pay hearing. We disagree.

"Rule 1:10-3 provides a 'means for securing relief and allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order.'" North Jersey Media Grp. Inc. v. State, Office of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (quoting In re N.J.A.C. 5:96, 221 N.J. 1, 17-18 (2015)). "The particular manner in which compliance may be sought is left to the court's sound discretion." Ibid. (quoting Bd. of Educ. of

Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Ch. Div. 2001)).

In an April 9, 2018 order, the sum of $35,000 in counsel fees was awarded to defendant's counsel. Because plaintiff lacked the funds to pay the court-ordered counsel fee award, the judge "reduce[d the] fee to a judgment in favor of the law firm" to "be satisfied from the sale of the marital home."

While defendant argued the judge should enforce the judgment from plaintiff's 2019 tax refund or other funds, the judge directed the judgment be satisfied from the net proceeds after the sale of the marital home. He explained it would be inappropriate to seek other methods of payment without first exhausting the funds from the home sale. In addition, the judge noted the law firm had various methods under the Rules of Court to enforce the docketed judgment. We discern no abuse of discretion in the judge's determination related to the satisfaction of the prior counsel fee award from plaintiff's share of the net proceeds realized from the sale of the marital home.

We next review defendant's contention that the judge erred in denying her request for reimbursement of the children's extracurricular expenses without compelling mediation or conducting a plenary hearing. We disagree based on the language in the MSA.

The MSA explicitly addressed the payment of extracurricular activities for the children. In accordance with the MSA, defendant was required to pay the first $2,520 annually toward the children's extracurricular activities because plaintiff's child support obligation included the sum of $210 per month for those activities. The MSA also required defendant to provide plaintiff with proof of payment of the extracurricular expenses. For extracurricular expenses exceeding $2,520 annually, the parties were required to agree, in writing, to activity and the cost. If the parties agreed to the activity, plaintiff was required to pay sixty-five percent and defendant was required to pay thirty-five percent of the additional costs. Further, the MSA provided that if a party registered a child for an extracurricular activity without the prior written consent of the other party, that party would be solely responsible for the cost.

Here, the judge held defendant failed to satisfy her obligation under the MSA regarding the children's extracurricular activities. He found defendant failed to "itemize or specifically explain the expenses" and did "not show plaintiff's written consent for the children to participate" in any added extracurricular activities. As a result of defendant's failure to comply with the MSA, the judge properly denied defendant's request for reimbursement of the extracurricular activities.

14

We next review defendant claim that she was entitled to an award of counsel fees related to her cross-motion. The decision to award counsel fees is generally left to trial court discretion. Martindell v. Martindell, 21 N.J. 341, 355-56 (1956). We "will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of a clear abuse of discretion." Slutsky v. Slutsky, 431 N.J. Super. 322, 365 (App. Div. 2018) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)).

We note the judge omitted any explanation supporting his denial of defendant's request for counsel fees. In the May 3, 2019 order, the judge wrote, "Each party is responsible for his/her own counsel fees." Having reviewed the record, we reason the judge acted within his discretion in denying defendant's request because he found each party was responsible for fifty percent of the joint marital debt and there was no reason to award counsel fees to either party under the circumstances.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4219-18T3