**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3559-18
     A-3240-19

ABIGAIL WEIDEL,

  Plaintiff-Respondent/
  Cross-Appellant,

v.

RICHARD A. WEIDEL, JR.,

  Defendant-Appellant/
  Cross-Respondent.

_____

Argued (A-3559-18) and Submitted (A-3240-19)
October 28, 2021 – Decided November 18, 2021

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0161-13.

Derek M. Freed argued the cause for appellant/cross-respondent (Ulrichsen Rosen & Freed LLC, attorneys; Derek M. Freed, of counsel and on the briefs; Lauren Koster Beaver, Amanda E. Nini, and Neethi Vasudevan, on the briefs).

Brian G. Paul argued the cause for respondent/cross-appellant (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Brian G. Paul, of counsel and on the briefs).

PER CURIAM

These are back-to-back appeals, consolidated for purposes of this opinion. In A-3559-18, defendant Richard A. Weidel, Jr., appeals from: a May 4, 2016 order granting plaintiff Abigail Weidel summary judgment declaring a purported pre-nuptial agreement (PNA) and a subsequent amendment unenforceable; a September 12, 2016 order denying reconsideration; equitable distribution provisions of a December 26, 2018 dual final judgment of divorce; an April 12, 2019 order denying reconsideration of the judgment; and equitable distribution provisions of an April 12, 2019 amended judgment. Plaintiff cross-appeals from portions of the equitable distribution provisions and the court's retroactive calculation of pendente lite support contained in the April order and amended judgment. In A-3240-19, defendant challenges a March 3, 2020 post-judgment order granting plaintiff's motion to enforce litigant's rights and counsel fees.

When the parties began dating in 1983, defendant worked for his father's real estate business. Soon, the parties moved in together. Plaintiff also started working for defendant's father's business as well. The parties were engaged in February 1985. Shortly before the parties' wedding in July 1985, defendant

hired an attorney to prepare the PNA.  There is no signed PNA in the record.  According to an unsigned version of the document, all property acquired before and during the marriage in one party's name would remain separate, including defendant's businesses "The Richard A. Weidel Corp. [(RAWC)], Princeton Mortgage Corp. [(PMC)] and all of their affiliates or any entities into which such companies may evolve."  The PNA also contained an alimony provision.

The PNA contained a schedule of assets, but plaintiff did not recall seeing it and defendant could not recall if it was attached to the agreement plaintiff signed.  Moreover, the schedule did not identify defendant's interest in Weidel Corp., a premarital business, and did not state the value of RAWC, PMC, their affiliates, or defendant's income or debts.  The document also lacked a schedule of plaintiff's assets.  Although the PNA stated each party had counsel, plaintiff testified she did not have an attorney.

In 1991, plaintiff was pregnant with the parties' third child and financially dependent on defendant when he presented her with an "Amendment to Ante-Nuptial Agreement."  An attorney who previously represented plaintiff in drafting a will  and separately represented the parties' business drafted the amendment.  Plaintiff was not represented, and signed the document without reading.  She testified that she felt she could not refuse to sign.

3

Like the original PNA, the amendment lacked a schedule of plaintiff's assets and contained an incomplete schedule of defendant's assets. It did not identify the value of Weidel Corp., RAWC, PMC, the Princeton School of Real Estate, Richard A. Weidel Referral Corp., or the life insurance policy defendant owned on his father. The amendment also stated the marital residence belonged to defendant despite the property's transfer into both parties' names in 1990. It also addressed the contemplated purchase of a new marital residence and altered the formula for support payments to plaintiff in the event of separation or divorce.

Before the marriage, defendant purchased the first marital residence and an investment property located at 166 North Union Street in Lambertville. The investment property was encumbered by a $105,000 mortgage as of the date of marriage. During the marriage, defendant purchased two more properties in Lambertville: 41 North Union, whose mortgage was paid from the rental income, and 46 York Street, which defendant claimed was paid for with a down payment from an account used to maintain the properties and premarital assets. The parties formed Coryell Properties, LLC to operate all three investment properties. In addition to raising the children and homemaking, plaintiff

managed the LLC, advertised, secured tenants, collected rent, and paid property expenses with funds from a marital bank account.

RAWC was founded by defendant's grandfather and was later expanded by defendant's father into a brokerage. Defendant's father diversified RAWC by creating PMC, the real estate school, the referral business, and a Pennsylvania brokerage called R.A. Weidel Corporation. In 1989, defendant acquired an ownership interest in RAWC through a Stock Cross Purchase Agreement (SCPA) with his father. The SCPA established RAWC's purchase price and defendant's exclusive right to purchase the business from his father, including at his father's death. The SCPA also required each of them to maintain life insurance, the proceeds of which would fund the purchase of the deceased partner's interest. Defendant's father also executed a will bequeathing three RAWC properties to defendant. Between 1989 and 2003, defendant purchased the rest of RAWC's shares.

The parties acquired several more properties during the marriage, including Pennington Road Properties, 2482/2490, LLC which owned two commercial buildings relevant to these appeals. The parties also owned various notes receivable, stocks, bank accounts and retirement accounts.

5

Plaintiff filed for divorce in 2012. In 2015, she moved for pendente lite support. The parties entered a March 26, 2015 consent order granting plaintiff $6,000 per month of unallocated non-taxable support, up to $1,000 per month in vehicle expenses paid through the businesses, and health insurance paid by defendant. The parties agreed defendant would pay "[a]n additional unallocated non-taxable monthly payment that will be quantified at final resolution of the case that is not less than $3,000 per month or more than $10,000 per month, retroactive to February 1, 2015 . . . ." The order also stated:

> The parties have reserved their rights regarding a judicial finding as to [p]laintiff's reasonable and appropriate pendente lite budget. The parties agree that [p]laintiff's pendente lite budget shall not be less than $10,000 per month or more than $17,000 per month, and will attempt to agree upon an amount at final resolution of the case. If the [c]ourt is required to adjudicate the issue at the time of the final hearing, [p]laintiff's total pendente lite budget shall not be found to be less than $10,000 per month or more than $17,000 per month, inclusive of Schedule "A," "B," and "C" expenses. This budgetary determination by the parties or court shall be made effective as of February 1, 2015, with [d]efendant receiving credit for all payments that he made . . . .

In March 2016, plaintiff moved for summary judgment dismissal of defendant's claim to enforce the PNA and its amendment. The judge granted the motion. She found the Statute of Frauds barred enforcement because defendant

6

failed to produce a signed copy of the document. She also found the PNA unenforceable because it waived plaintiff's interests in RAWC and PMC before defendant even owned the entities. The judge concluded the lack of financial disclosures rendered plaintiff's "waiver of her future marital rights" unenforceable. The judge also found the amendment unenforceable because the attorney who prepared it had a conflict of interest. On September 12, 2016, the judge denied defendant's motion for reconsideration.

During the ensuing twenty-day divorce trial, the court heard testimony from the parties and twelve other fact and expert witnesses. The trial judge made extensive findings in her October 1, 2018 written opinion, an amended October 9 opinion, the December 26, 2018 judgment, and a January 9, 2019 supplemental opinion.

The judge granted plaintiff thirty-three percent interest of the value of RAWC, PMC, the real estate school, R.A. Weidel Corp., and the referral company. She rejected defendant's argument that fifty-seven of the 100 shares acquired in the businesses were gifts from his father because the SCPA and the father's will stated shares could only be acquired by purchase.

The trial judge also awarded plaintiff thirty-three percent of the life insurance proceeds, again rejecting defendant's argument they were a gift. She

found defendant's testimony incredible because the life insurance application designated defendant as the policy owner and defendant paid the premiums.

The judge awarded plaintiff a thirty-five percent interest in the value of Princeton Assurance Corp., Weidel Corp., and a note receivable held by Weidel Corp. She awarded plaintiff thirty-three percent of the equity in the real estate branch offices, forty-five percent of a farm property, and fifty percent of the equity in the marital residence. The judge found 166 North Union Street had a value of $180,000 at the start of the marriage and was encumbered by $135,000 in debt, resulting in $45,000 of pre-marital equity. The parties stipulated the property's value at the time of trial was $560,000. The judge concluded only $140,000 of the property's value was subject to equitable distribution. The judge found the 46 York Street property subject to equitable distribution and rejected defendant's argument the $75,000 down payment on the property was exempt from equitable distribution because it was paid from pre-marital assets.

Plaintiff's equitable distribution was more than ten million dollars, which the judge ordered paid through in-kind transfers, lump sum payments, and periodic payments.[1] Among the properties awarded in-kind, the judge awarded plaintiff the 2482/2490 Pennington Road commercial buildings, reasoning the

---

[1] Defendant's equitable distribution was nearly double plaintiff's.

rental income would sustain her at the marital standard of living. The property housed the RAWC corporate headquarters, PMC, and the real estate school, which the judge noted were in the process of vacating the premises.

The judge attached post-judgment interest to the payment portion of the equitable distribution and ordered the payments be secured by a mortgage to plaintiff. The judge did not specify which properties would secure the mortgages. The judge denied plaintiff's request for pre-judgment interest because she received over $1.3 million as an advanced equitable distribution, defendant paid the pendente lite carrying costs on the parties' properties, and defendant had substantial equitable distribution payments to make post-judgment. Because defendant would have to pay plaintiff her share of the business values through a taxable dividend, the judge reduced plaintiff's share of the amount she would receive by an amount equivalent to the tax.

The trial judge concluded plaintiff required $18,007 per month to live reasonably comparable to the marital lifestyle. The judge awarded plaintiff a pendente lite credit of $163,184, representing $3,472 per month for the forty-seven-month pendente lite period of additional support owed to plaintiff. The figure was calculated by setting a pendente lite budget for plaintiff of $13,372 per month, subtracting the $7,000 defendant agreed to pay pendente lite, and

9

$2,900 in income imputed to plaintiff. The judge denied plaintiff's request for alimony and each party's request for counsel fees.

Each party filed motions for reconsideration related to the court's award of the Pennington Road property to plaintiff. Relevant to the issues raised on appeal, defendant certified, "we have continued the process of moving [the businesses] out of 2482 [Pennington Road]. The process is irreversible." The parties ultimately agreed plaintiff should retain the Pennington Road property. The trial judge entered the April 12, 2019 amended judgment, incorporating their agreement to transfer the property to plaintiff "subject to existing leases" by July 1, 2019.

After the transfer, plaintiff learned defendant entered multi-year leases with PMC and Princeton Assurance Corporation to continue occupying the property. Plaintiff rejected the leases and filed a post-judgment enforcement motion in July 2019, which was heard by the post-judgment motion judge. She alleged defendant failed to execute the mortgages to secure his equitable distribution obligations and failed to vacate the Pennington Road property. She requested defendant pay her rent of thirteen dollars per square foot under a triple net lease, commencing July 2019 until the businesses vacated the property. Plaintiff did not quantify the triple net expenses.

On October 29, 2019, the motion judge found defendant in violation of litigant's rights for failing to execute the mortgages. She ordered the parties to negotiate the terms of the mortgages granting plaintiff "all rights and remedies" of a mortgage, as stated in the amended judgment. The judge also ruled defendant violated the judgment by failing to vacate the property. She ordered the businesses to vacate within thirty days and granted plaintiff's request for rent.

In January 2020, plaintiff filed a second enforcement motion. She alleged defendant failed to execute the mortgages. She also sought $103,073.83 in past due rent, which she calculated at the thirteen-dollars-per-square-foot-rate for the entire building plus triple net expenses less defendant's payments. Plaintiff alleged defendant's businesses occupied the entire property as sole tenants, frustrating her ability to market and sell the buildings. She also sought counsel fees.

Defendant filed a cross-motion and opposition to plaintiff's motion. He admitted the businesses formerly occupied the entire property, but claimed he owed back rent only for the portion the businesses currently occupied. He disputed the rental rate, asserting thirteen-dollars-per-square-foot-rate already

included triple net expenses. In the cross-motion, he argued plaintiff should be compelled to cooperate with the October 2019 order.

On March 3, 2020, the motion judge found defendant violated the October 2019 order by failing to execute the mortgages. The judge denied defendant's cross-motion, noting the October order identified the properties securing the mortgages based on the parties' agreement. She also found defendant violated the October order by failing to pay the rent. She concluded the October order procedurally barred him from contesting the amount of the rent. The judge further ordered defendant to pay the sum of rent sought in plaintiff's motion. She granted plaintiff $7,315 in counsel fees, reasoning defendant had the greater ability to pay, plaintiff acted reasonably and in good faith, and plaintiff succeeded on her enforcement motion.

I.

In A-3559-18, defendant raises the following points on appeal:

> I. THE TRIAL COURT ERRED WHEN IT GRANTED PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DECLARED THE PNA AND THE AMENDMENT TO BE UNENFORCEABLE.
>
> . . . .

12

B. Plaintiff's Motion for a Partial Summary Judgment Should Have Been Denied as There Were Disputed Genuine Facts.

C. Enforcement of the 1985 PNA Is Not Barred by The Statute of Frauds as a Matter of Law.

D. The PNA Was Ratified by the Amendment and Any Disputed Material Facts Concerning the Agreement's Ratification Should Have Been Construed in Defendant's Favor.

E. The Trial Court Erred by Entering Summary Judgment Given the Caselaw.

F. Plaintiff's Claim that the 1991 Amendment Was Unenforceable Due to An Alleged Conflict of Interest Was Based on Questions of Fact Involving Subjective Elements and Credibility, Which Should Not Have Been Resolved by Summary Judgment.

G. Plaintiff's Claim Regarding the Enforceability of the 1991 Amendment Due to Alleged Lack of Full Financial Disclosure Was Based on Questions of Fact Involving Subjective Elements and Credibility, Which Should Not Have Been Resolved by Summary Judgment.

II. THE TRIAL COURT ERRED IN ITS EQUITABLE DISTRIBUTION ANALYSIS AS IT PROVIDED PLAINITFF WITH EQUITABLE DISTRIBUTION OF ASSETS THAT WERE EXEMPT EITHER IN WHOLE OR PART.

. . . .

B. The Trial Court Erred When It Denied Defendant's Request to Exclude the Life Insurance

13

Proceeds Derived from the Life Insurance Policy Covering Defendant's Father's Life and [Fifty-Seven Percent] of the RAWC Entities from the Marital Estate.

C.    The Trial Court Erred by Failing to Rule that [Fifty-Seven Percent] of the RAWC-Related Entities Defendant Received by way of Gift were Exempt from Equitable Distribution.

D.    The Trial Court Erred when it Declined to Find that any Portion of the Down Payment Defendant made on 46 York St. was Exempt from Equitable Distribution.

III.    THE TRIAL COURT ERRED IN THE MANNER IN WHICH IT TREATED THE DIVIDEND TAX INCURRED BY DEFENDANT WHEN EFFECTUATING PAYMENT OF EQUITABLE DISTRIBUTION.

IV.    THE TRIAL COURT ERRED IN THE PERCENTAGES OF EQUITABLE DISTRIBUTION IT AWARDED TO PLAINTIFF.

A.    Plaintiff Should Have Received a Lesser Percentage of the Business Entities.

B.    The Plaintiff's Percentage Share of the Coryell Properties Should Have Been Reduced.

V.    THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUESTS FOR RECONSIDERATION.

Plaintiff raises the following points in her cross-appeal:

[I.] THE TRIAL COURT ERRED WHEN DETERMINING THE AMOUNT OF THE

RETROACTIVE PENDENTE LITE CREDIT REQUIRED UNDER THE PARTIES' MARCH 26, 2015 CONSENT ORDER.

[II.] [THE TRIAL JUDGE'S] DETERMINATION ONLY $140,000 OF THE $515,000 OF APPRECIATION IN THE VALUE OF 166 NORTH UNION ST. THAT TOOK PLACE DURING THE MARRIAGE IS SUBJECT TO EQUITABLE DISTRIBUTION IS NOT BASED UPON SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD AND FAILS TO COMPORT WITH CONTROLLING LEGAL PRINCIPLES.

[III.] PURSUANT TO [RULE] 4:42-11(a)(iii), THE COURT ERRED IN FAILING TO AWARD PLAINTIFF POST-JUDGMENT INTEREST ON THE $3,345,000 OF REAL ESTATE (2482/2490 PENNINGTON RD. AND 46 YORK STREET) SHE WAS AWARDED IN EQUITABLE DISTRIBUTION IN THE DECEMBER 26, 2018 FINAL JUDGMENT OF DIVORCE, BUT WAS NOT RECEIVING UNTIL JULY 1, 2019; OR, IN THE ALTERNATIVE, AWARDING TEMPORARY ALIMONY UNTIL THE JULY 1, 2019 TRANSFER TOOK PLACE.

A.

We defer to a trial judge's factfinding "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "We do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." M.G. v. S.M., 457 N.J. Super. 286, 293 (App.

Div. 2018) (quoting Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). However, "legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The Family Part has "special jurisdiction and expertise in family matters," which often requires the exercise of reasoned discretion. Cesare, 154 N.J. at 413. Judges have broad discretion to allocate assets in equitable distribution. Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012) (citing Steneken v. Steneken, 367 N.J. Super. 427, 435 (App. Div. 2004)). If we conclude there is satisfactory evidentiary support for the trial judge's findings, our "task is complete and [we] should not disturb the result." Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 161-62 (1964)).

Similarly, "the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court . . . [and] will be left undisturbed

16

unless it represents a clear abuse of discretion." <u>Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment</u>, 440 N.J. Super. 378, 382 (App. Div. 2015).

We review summary judgment rulings de novo, applying the same legal standard as the trial court. <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 N.J. 189, 199 (2016). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." <u>Ibid.</u> (quoting <u>R.</u> 4:46-2(c)).

### B.

Having thoroughly considered the record and the parties' arguments, we affirm substantially for the reasons expressed by the pendente lite motion judge and the trial judge. We add the following comments.

Summary judgment for plaintiff was proper because there is no credible dispute that: the PNA was unsigned; there was no full financial disclosure; and plaintiff was unrepresented. Under these circumstances, a hearing was not required to adjudicate the enforceability of the PNA because it was unenforceable as a matter of law under the Statute of Frauds. <u>See</u> N.J.S.A. 25:1-5(c).

Notwithstanding the Statute of Frauds, defendant notes we have reversed summary judgment where the parties admitted the existence of an agreement but lacked a copy of the fully executed agreement. Gabesons Realty Co. v. Natelson, 208 N.J. Super. 684, 686-87 (App. Div. 1986). However, Gabesons is inapposite because it did not concern a pre-nuptial agreement, which requires full financial disclosure and must be "fair and not unconscionable." See Rogers v. Gordon, 404 N.J. Super. 213, 219 (App. Div. 2008). Moreover, unlike Gabesons, here there was no mutual understanding that the parties had signed an agreement.

Defendant's argument the amendment ratified the PNA is misplaced. We recently stated

> mid-marriage agreements are generally unenforceable as they are "inherently coercive." [Pacelli v. Pacelli, 319 N.J. Super. 185, 191 (App. Div. 1999).] A mid-marriage agreement is "entered into before the marriage [has] lost all of its vitality and when at least one of the parties, without reservation, want[s] the marriage to survive." Id. at 190-91. Such agreements are carefully reviewed because they are "pregnant with the opportunity for one party to use the threat of dissolution 'to bargain themselves into positions of advantage.'" Id. at 195 (citation omitted).
>
> [Steele v. Steele, 467 N.J. Super. 414, 436 (App. Div. 2021) (second and third alterations in original).]

In Steele, we reversed the entry of a declaratory judgment, which determined the parties' mid-marriage agreement was a pre-nuptial agreement. Id. at 443. On remand, we directed the trial court to apply "heightened scrutiny," review the document for "fundamental fairness," consider the adequacy of the financial disclosure, and consider the circumstances of the negotiation and execution of the document. Ibid.

Here, regardless of how the amendment is styled, it bears the hallmarks of an unenforceable mid-marriage agreement. Plaintiff was not represented by independent counsel and there was no credible dispute that there was no full financial disclosure. Therefore, the hearing required in Steele was unwarranted and plaintiff was entitled to summary judgment as a matter of law.

Defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

C.

Plaintiff appeals from the trial judge's adjudication of the pendente lite support credit. She also challenges the equitable distribution of the appreciation on the marital portion of the value of 166 North Union Street, and the lack of post-judgment interest or a temporary alimony award for the approximately seven month period she awaited her equitable distribution.

As we noted, plaintiff sought pendente lite spousal support. In the March 2015 consent order, the parties agreed to a pendente lite payment subject to a final adjudication by the court, which could be no less than $10,000 and no greater than $17,000 per month.

Initially, in adjudicating the pendente lite credit, the trial judge found plaintiff required $18,007 per month to maintain the marital standard of living. Because the figure exceeded $17,000, the judge reduced the figure by the $7,000 per month defendant had paid and concluded plaintiff should receive an additional $9,000 retroactive to February 1, 2015.

However, in the trial judge's January 9, 2019 supplemental opinion, she concluded, sua sponte, her initial ruling was wrong and reasoned:

> In resolving this issue in the October opinion, the court did not consider the standard dictated by the consent order – a "reasonable and appropriate" budget pending resolution of the case. The court utilized the marital standard of living as the measure, which is not what the consent order requires. The consent order focuses on a budget that is "reasonable and appropriate" pending resolution of the case, not post-judgment.

Ignoring her findings regarding the marital lifestyle, the judge prepared her own Case Information Statement budget for plaintiff, adjusted plaintiff's budget, and set a pendente lite budget of $13,372 per month. The judge reduced

this figure by $2,900 in imputed income and the $7,000 support plaintiff received, leaving a $3,472 per month credit.

The judge denied plaintiff's reconsideration motion. She found the consent order did not require her "to simply use the $18,007 per month (representing a standard of living reasonably comparable to the marital standard). That is what was done in the October opinion inadvertently, and that is why it was re-adjusted sua sponte." Plaintiff urges us to reverse.

Pendente lite support awards are subject to amendment after trial because they are typically established by the submission of certifications and without the benefit of a plenary hearing. N.J.S.A. 2A:34-23; Mallamo v. Mallamo, 280 N.J. Super. 8, 11-12 (App. Div. 1995).

> In many instances the motion judge is presented reams of conflicting and, at times, incomplete information concerning the income, assets and lifestyles of the litigants. . . . Absent agreement between the parties, however, a judge will not receive a reasonably complete picture of the financial status of the parties until a full trial is conducted.
>
> [Id. at 16.]

The Supreme Court has emphasized the goal of spousal support "is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage."

Crews v. Crews, 164 N.J. 11, 16 (2000), see also N.J.S.A. 2A:34-23(b)(4). Because spousal support is so closely identified with the marital lifestyle, even where parties have settled their divorce, they must address the marital lifestyle in the settlement. See R. 5:5-2(e) (providing a range of options, including preserving the means to calculate the marital standard of living and agreeing the marital lifestyle is satisfied by the settlement). The marital lifestyle is the yardstick to measure and establish appropriate spousal support, whether pendente lite or post-judgment. See S.W. v. G.M., 462 N.J. Super. 522, 532-33 (App. Div. 2020) (holding that fashioning spousal support from the pendente lite lifestyle is an error because it ignores the statutory mandate to consider marital lifestyle and does not capture how the parties actually lived).

A court must enforce written agreements absent unconscionability, fraud, or overreaching. Quinn v. Quinn, 225 N.J. 34, 47 (2016). Waivers must be done "clearly, unequivocally, and decisively." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 277 (2013) (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). There must also be valuable consideration to enforce a waiver. Fattore v. Fattore, 458 N.J. Super. 75, 88 (App. Div. 2019) (quoting W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 152-53 (1958)).

We are unconvinced plaintiff waived the applicability of the marital lifestyle to the calculation of pendente lite support. The consent order contained no such language. Plaintiff sought alimony, and convinced the trial judge she needed $18,007 per month to sustain herself in accordance with the marital lifestyle. Therefore, the judge was required to start with the marital lifestyle in calculating the reasonable and appropriate amount of the <u>Mallamo</u> credit. For these reasons, we reverse the calculation of the pendente lite credit and direct the court to utilize the marital lifestyle figure of $18,007 per month to determine the reasonable and appropriate pendente lite budget for plaintiff, not exceeding $17,000 per month.

The remaining arguments raised on the cross-appeal relating to the 166 North Union Street property and the post-judgment interest lack sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

II.

In A-3240-19 defendant asserts the following points:

> I.    PARAGRAPH FIVE OF THE TRIAL COURT'S MARCH 3, 2020 ORDER SHOULD BE REVERSED, AS DEFENDANT WAS NOT PROCEDURALLY BARRED FROM ASSERTING THAT HIS BUSINESSES OCCUPIED ONLY [FIFTY PERCENT] OF THE OFFICE BUILDING LOCATED AT 2482 PENNINGTON ROAD.

. . . .

II. THE TRIAL COURT'S CALCULATION OF THE ALLEGED RENT ARREARS MISCALCULATED THE TRIPLE NET EXPENSES.

III. PARAGRAPH THREE OF THE TRIAL COURT'S MARCH 3, 2020 ORDER SHOULD BE REVERSED, AS THE COURT FAILED TO MAKE SUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE TERMS OF THE MORTGAGES THAT WOULD ACT AS SECURITY FOR DEFENDANT'S OBLIGATIONS.

. . . .

IV. [PARAGRAPH] 6 OF THE TRIAL COURT'S MARCH 3, [2020] ORDER REQUIRING DEFENDANT TO PAY $7,315 IN COUNSEL FEES TO PLAINTIFF'S ATTORNEY SHOULD BE REVERSED [BECAUSE THE] DECISION IS NOT BASED ON SUBSTANTIAL EVIDENCE IN THE RECORD AND LACKS A RATIONAL EXPLANATION.

A trial court's enforcement of litigant's rights is subject to an abuse of discretion standard. Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011). Likewise, "[t]he assessment of counsel fees is discretionary." Slutsky v. Slutsky, 451 N.J. Super. 332, 365 (App. Div. 2017) (citations omitted).

In Points I and II, defendant challenges the post-judgment motion judge's rent calculation for the Pennington Road property under a triple net lease. "A

24

'triple net' or 'net-net-net' lease is a lease in which a commercial tenant is responsible for 'maintaining the premises and for paying all utilities, taxes and other charges associated with the property.'" Geringer v. Hartz Mountain Dev. Corp., 388 N.J. Super. 392, 400 n.2 (App. Div. 2006) (quoting N.J. Indus. Props. v. Y.C. & V.L., Inc., 100 N.J. 432, 434 (1985)).

Notwithstanding this definition, we conclude the motion judge erred in ruling defendant was barred from disputing the rent calculation because the expenses included in the rent were not adjudicated in the October 2020 order. The judge did not explain her decision to impose the base rent plus the additional expenses. See R. 1:7-4(a). The only trial evidence in the record on the matter was an appraisal prepared by plaintiff's real estate expert in which he opined the rental rate for the Pennington Road property was "15,104 square feet at [thirteen dollars] per square foot = (Triple Net) $196,352." For these reasons, we remand this issue for further findings.

Our decision to remand the rent issue does not affect the counsel fee award because those fees were clearly warranted considering defendant's failure to vacate the Pennington Road property or comply with the October 2020. The remaining arguments raised on this appeal lack merit. See R. 2:11-3(e)(1)(E).

III.

Affirmed in part and reversed and remanded in part in A-3559-18. Affirmed in part and remanded in part for further findings in A-3240-19. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION