**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0496-24

MARY CATHERINE BARAN,

    Plaintiff-Appellant,

v.

GEORGE L. BARAN,

    Defendant-Respondent.

_____

> Submitted September 9, 2025 – Decided September 16, 2025
>
> Before Judges Susswein and Chase.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1255-22.
>
> Richard Obuch, attorney for appellant.
>
> Respondent has not filed a brief.

PER CURIAM

    In this post-judgment matrimonial appeal, plaintiff, Mary Baran, challenges the Family Part's September 13, 2024 order, denying her request to

unfreeze defendant George Baran's Fidelity retirement account and granting his cross-motion to execute a Qualified Domestic Relations Order ("QDRO"). This dispute arises from the parties' efforts to effectuate their settlement and, more acutely, in the parties' divergent interpretations as to the division of retirement assets. We conclude that a plenary hearing is required and accordingly vacate and remand.

## I.

Plaintiff and defendant were married in 1995. They were divorced in June 2023 by way of a Final Judgment of Divorce which incorporated a Property Settlement Agreement ("PSA").

Pertinent to this appeal, Article Eight, paragraph C of the PSA provides that modifications to any provision of the Agreement "shall be effective only if made in writing and executed with the same formality as this Agreement." Article Five, paragraph A(5) details that retirement accounts were to be divided by a QDRO, prepared by a mutually selected expert, based on the marital coverture from date of marriage to date of complaint. Costs were to be shared equally. The PSA further noted that division of an annuity was resolved by a lump sum payment tied to the equity in the marital home.

Attempts to formalize the QDRO were stymied by several rejections from Fidelity, the retirement account custodian. After negotiation, the parties agreed

 A-0496-24

on language acceptable to Fidelity, resulting in a proposed QDRO filed by defendant in March 2024 ("March QDRO"). Paragraph ten stated that plaintiff is entitled to earnings on her share, from the valuation date until segregation. It is not clear from the record if this QDRO was ever signed by the court.

In June, defendant, without plaintiff's consent, submitted a proposed amended QDRO ("June 5 QDRO") eliminating paragraph ten. Plaintiff objected in writing and negotiations ensued. Ultimately, the parties and their respective counsel prepared, signed, and submitted to the court a new QDRO ("June 26 QDRO") which restored and clarified paragraph ten by delineating each party's entitlement to gains, losses, dividends, and interests in their respective shares.

Following Fidelity's implementation of the signed June 26 QDRO, defendant contacted Fidelity questioning its interpretation of paragraph ten. Fidelity responded by freezing the account. As a result, plaintiff moved to unfreeze the funds and defendant cross-moved to adopt the objected-to June 5 QDRO.

After oral argument, the Family Part denied plaintiff's motion and granted defendant's cross motion, reasoning the June 26 QDRO lacked the formality required by the PSA and defendant entered into it by mistake.

This appeal follows.

A-0496-24

II.

We begin our analysis by setting forth basic principles that guide us in our review.  We typically "accord deference to a trial court's fact findings, particularly in family court matters where the court brings to bear its special expertise."  Moynihan v. Lynch, 250 N.J. 60, 90 (2022) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record."  Ibid.

Furthermore, we review decisions on post-judgment motions for abuse of discretion.  D.M.C. v. K.H.G., 471 N.J. Super. 10, 27 (App. Div. 2022).  An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Ibid. (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)).  "However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo."  Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

III.

On appeal, plaintiff argues the court erred in determining that the signed June 26 QDRO was not an amendment to the PSA.  Moreover, plaintiff contends

the court should have ordered a plenary hearing to determine the parties' intent before deciding that defendant entered the June 26 QDRO by mistake.

"An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)), certif. denied, 94 N.J. 600 (1983). "Settlement agreements in matrimonial matters, being 'essentially consensual and voluntary in character, . . . [are] entitled to considerable weight with respect to their validity and enforceability' in equity provided they are fair and just." Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Peterson, 85 N.J. 638, 642 (1981)); see also Lepis v. Lepis, 83 N.J. 139, 153 (1980); Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970); Schlemm v. Schlemm, 31 N.J. 557, 581-82 (1960). We note that "[s]ettlement of litigation ranks high in the pantheon of public policy." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011). Thus, "'fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed.'" Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999) (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)).

A-0496-24

Nonetheless, "'the law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)). Furthermore, in addition to a Family Part judge's duty to assure the equitable enforcement of agreements, the law imposes a duty of fairness upon the parties. Fattore v. Fattore, 458 N.J. Super. 75, 88 (App. Div. 2019).

Importantly, "in the Family Part, a plenary hearing is only required if there is a genuine, material and legitimate factual dispute." Segal v. Lynch, 211 N.J. 230, 264-65 (2012); see R. 5:8-6. "[A] party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary." Lepis, 83 N.J. at 159; accord Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). Material factual disputes "bear directly on the legal conclusions required to be made and [such] disputes can only be resolved through a plenary hearing." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 540 (App. Div. 2015).

For example, in Harrington v. Harrington, we required a hearing when the parties' certifications demonstrated a genuine factual dispute as to the modification of a material term of a PSA. 281 N.J. Super. 39, 47 (App. Div 1995). Similarly, we required a hearing when the parties filed contradictory certifications disputing whether the parties had reached final agreement.

6

Whitfield v. Whitfield, 315 N.J. Super. 1, 11-12 (App. Div. 1998). A plenary hearing may also be required when the record demonstrates that equity may mandate modification or reformation of a PSA. Conforti v. Guliadis, 128 N.J. 318, 322 (1992).

The contested question is whether the June 26 QDRO, executed by both parties and counsel, reflects mutual intent to modify or supplement the components of the PSA. While we agree with the court that the parties' intent is the linchpin, we part company with its determination that the parties did not intend to amend the PSA. The Family Part's conclusion, that such modification required more explicit formality or specific phrasing, does not comport with the core doctrine that mutual settlement terms carry significant weight. The parties and their counsel signed the June 26 QDRO and submitted it to the court. This evidenced their intent to settle their dispute and amend the PSA.

However, our analysis does not end there as the record reveals bona fide disputes regarding the intent and operation of paragraph ten of the June 26 QDRO and whether defendant entered into it by mistake. These disputes are material and the equities at stake are significant. Fidelity's factual application of the parties' agreement further magnifies the need for clarity. Such clarity can only be achieved by plenary hearing, where the parties may testify and credibility can be assessed.

A-0496-24

Vacated and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division